TP

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 2:18-mj-621 |
| Chris Cook | ) |
| | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __8/20/2018__ in the county of __Fairfield__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841<br>Title 21 U.S.C. 846 | Possession with intent to distribute in excess of 50 grams of methamphetamine<br>Conspiracy to possess with intent to distribute in excess of 50 grams of methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

_____
Complainant's signature

DEA Special Agent Nick Eichenlaub
Printed name and title

Sworn to before me and signed in my presence.

Date: 8/21/2018

_____
Judge's signature

City and state: Columbus, Ohio

Kimberly A. Jolson, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANTS**

I, Nicholas A. Eichenlaub, (hereafter referred to as affiant) being duly sworn depose and state:

**INTRODUCTION**

I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. Your affiant has been employed by the DEA since March, 2012. Your affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878.

Prior to being employed by the DEA your affiant was employed by the City of Elyria Police Department located in Elyria, Ohio from April, 2006 until March, 2012. During this time, your affiant has accumulated the following training and experience:

  (a) I graduated from the DEA Academy located at the FBI Academy, Quantico, Virginia. I received approximately 16 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

  (b) During the course of my law enforcement career I have had experience in debriefing defendants; interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution, and concealment of records, narcotics and proceeds of trafficking in controlled substances. Drug Traffickers often carry Firearms to prevent narcotics and proceeds from being stolen. (NE)

(c) As a DEA agent and police officer, I have participated in the execution of numerous search warrants at the residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous arrests for drug related offenses. I have drafted numerous federal DEA search warrants.

(d) As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine and other controlled substances as defined in 21 U.S.C.§801.

(e) During the course of my law enforcement career, I have completed the following training; Ohio Police Officer Basic Training Program (August, 2006), Advanced Detection, Apprehension and Prosecution of persons under the influence (July, 2006), Criminal Patrol / Highway Interdiction (June, 2008), USDOJ FBI Police Basic SWAT School (October, 2008).

The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, and from persons with knowledge regarding relevant facts and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this investigation.

## PROBABLE CAUSE

1. Since March 2018, members of the DEA Columbus District Office, FBI Columbus Resident Office, and Fairfield Hocking Major Crimes Unit have been investigating Chris COOK and his drug distribution in Lancaster, Ohio. During this time members of the Fairfield Hocking Major Crimes Unit have received several citizen complaints regarding **205 S. Cedar Avenue, Lancaster, Ohio** and **128 Welsh Avenue, Lancaster, Ohio**. Several of the complaints have been due to suspected drug trafficking activities (i.e. several different individuals arriving at either location, staying for short periods of time before leaving).

2. On or about July 6, 2018, members of the DEA Columbus District Office established surveillance at **205 S. Cedar Avenue, Lancaster, Ohio.** Investigators observed a vehicle park in the driveway of **205 S. Cedar Avenue** and the passenger exit the vehicle counting money while walking toward the residence. Investigators later observed a vehicle park on the street away from **205 S. Cedar Avenue.** Investigators observed a white male run from the vehicle to **205 S. Cedar Avenue**, enter the residence, and stay for approximately four minutes before departing the residence.

3. On or about July 10, 2018, members of the DEA Columbus District Office and Fairfield Hocking Major Crimes Unit were conducting surveillance of **205 S. Cedar Avenue, Lancaster, Ohio and 128 Welsh Avenue, Lancaster, Ohio.** During the surveillance investigators observed several individuals arrive at **205 S. Cedar Avenue** and stay for a short period of time before departing. Based on your Affiants training and experience, the high traffic at a residence with short durations of stay are consistent with narcotics being sold at a residence.

4. Investigators observed a red work truck, registered to COOK, being operated by Derek NICHOLSON. Investigators have received information that Nicholson had previously acted as a courier for COOK. Investigators observed NICHOLSON meet with a vehicle around the corner from **128 Welsh Avenue, Lancaster, Ohio, a location known to be a business owned by COOK.** Investigators observed the red work truck operated by NICHOLSON, and the second vehicle drive in tandem from the area of **128 Welsh Avenue** to **205 S. Cedar Avenue, Lancaster, Ohio.** Investigators observed NICHOLSON park the truck in the driveway of **205 S. Cedar Avenue** and enter the residence. Investigators observed the second vehicle, and operator of the vehicle park in the street in front of **205 S. Cedar Avenue.** After a short period of time, investigators observed NICHOLSON exit the residence, enter the passenger side of the second vehicle, and the vehicle departed the area. Investigators maintained surveillance on the second vehicle, while it drove on country roads. Investigators observed the vehicle return to **205 S. Cedar Avenue**, NICHOLSON exit the passenger side of the vehicle and enter **205 S. Cedar Avenue.** The driver of the second vehicle departed the area and investigators coordinated a traffic stop on the vehicle, conducted by a

Fairfield County Sheriff's Deputy, on 6th Street, in Lancaster, Ohio.

5. During the traffic stop, a Fairfield County Sheriff's Deputy deployed a drug detecting K-9, which alerted to the odor of narcotics coming from the vehicle. A probable cause search of the vehicle resulted in the seizure of approximately 6 grams of crystal methamphetamine. The driver, hereafter referred to as Cooperating Defendant 1 (CD1), was read his/her Miranda warning. CD1 agreed to speak with investigators. CD1 stated that he/she had met a subject known to him/her as Derek near Welsh Avenue. This was corroborated by investigators when they observed the truck operated by NICHOLSON parked in the driveway of 128 Welsh Avenue, Lancaster, Ohio prior to meeting with CD1. CD1 stated that he/she followed Derek to a residence, and then he/she and Derek drove around to consummate a deal for crystal methamphetamine. Investigators also corroborated this during surveillance.

6. On or about August 8, 2018, a confidential source, hereafter referred to as CS1, was directed by COOK to come to COOK's "shop" located at **128 Welsh Avenue, Lancaster, Ohio**. Under the direction of investigators, and with $300 in recorded U.S. Currency, CS1 entered the "shop" and met with COOK where CS1 purchased 7 grams of crystal methamphetamine for $300. CS1 was followed by investigators to a pre-determined meet location where CS1 provided investigators with approximately 7 grams of crystal methamphetamine. The person and vehicle of CS2 were searched before and after the transaction.

7. On or about August 13, 2018, a confidential source, hereafter referred to as CS2, contacted COOK. COOK stated to CS2 that he (COOK) had methamphetamine to sell. CS2 was given $200 in recorded U.S Currency and directed by investigators to go to COOK's residence **205 S. Cedar Avenue, Lancaster, Ohio** to purchase 7 grams of crystal methamphetamine for $200. Investigators observed CS2 arrived at **205 S. Cedar Avenue** and enter the residence. After a short period of time investigators observed CS2 exit the residence, enter CS2's vehicle and depart the area. CS2 was followed by investigators to a pre-determined meeting location where CS2 provided investigators with approximately 7 grams of crystal methamphetamine. The person

and vehicle of CS2 were searched before and after the transaction.

8. CS2 stated that he/she observed COOK pouring crystal methamphetamine from a different bag into the bag that was given to CS2. CS2 stated that there was a large television in the kitchen that monitored several surveillance cameras around the residence. CS2 further stated that that the front door of the residence was barricaded. Your Affiant is aware that drug traffickers often barricade exterior doors to the residence and install surveillance systems on their residences to warn them of law enforcement presence in the area and prevent entry into their residences.

9. On or about August 13, 2018, a confidential source, hereafter referred to as CS3, contacted COOK. COOK told CS3 to come to **128 Welsh Avenue, Lancaster, Ohio** to purchase an undetermined amount of crystal methamphetamine from him. Investigators directed CS3 to **128 Welsh Avenue**, and observed him/her enter the address. CS3 was later observed exiting **128 Welsh Avenue** and entering CS3's vehicle. CS3 was followed by investigators to a pre-determined meeting location where CS3 provided investigators with one gram of crystal methamphetamine. CS3 stated that COOK charged $50 for the gram and stated that COOK was out and had to get more. The person and vehicle of CS2 were searched before and after the transaction.

10. On or about August 16, 2018, CS2 contacted COOK regarding the purchase of crystal methamphetamine. COOK directed CS2 to come to his residence **205 S. Cedar Avenue, Lancaster, OH.** Investigators observed CS2 arrive at **205 S. Cedar Avenue** and enter the residence. After a short period of time CS2 exited the residence entered CS2's vehicle and departed the area followed by investigators. CS2 was followed by investigators to a pre-determined location where CS2 provided investigators with approximately 7 grams of crystal methamphetamine. CS2 stated that he/she was charged $200 for the crystal methamphetamine purchased from COOK. The person and vehicle of CS2 were searched before and after the transaction.

11. On or about August 20, 2018, CS2 contacted COOK regarding the purchase of crystal methamphetamine. COOK directed CS2 to come to his residence **205 S. Cedar Avenue, Lancaster, Ohio.**

Investigators observed CS2 arrive at **205 S. Cedar Avenue**, and enter the residence. After a short period of time CS2 exited the residence, entered CS2's vehicle and departed the area followed by investigators. The CS was followed by investigators to a pre-determined meeting location where CS2 provided investigators with approximately 28 grams of crystal methamphetamine. CS2 stated that he/she was charged $650 for the crystal methamphetamine purchased from COOK. The person and vehicle of CS2 were searched before and after the transaction.

12. Your Affiant believes that based on the facts contained in this affidavit, there is probable cause to believe COOK conspired with the intent to distribute methamphetamine, in violation of 21 USC 841(a)(1), Possession with Intent to Distribute methamphetamine, and 21 USC 846, Conspiring with Intent to Distribute methamphetamine.

_____
Nick Eichenlaub
Special Agent
Drug Enforcement Administration

Subscribed and Sworn before me
This 21st of August, 2018 in Columbus, Ohio

_____
Honorable Kimberly A. Jolson
U.S. Magistrate Judge
Southern District of Ohio